UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| HAIRPIN-TURN GOLDEN EAGLE, INC. and JOHN T. MORRIS, <br>     Plaintiffs <br><br> v. <br><br> 3M COMPANY, <br>     Defendant | MDL No. 2873 <br><br> Master Docket No.: 2:18-mn-2873 <br><br> JUDGE RICHARD M. GERGEL <br><br> Civil Action No. 2:23-cv-3569-RMG |

**COMPLAINT WITH JURY DEMAND**

**<u>INTRODUCTION</u>**

This is a civil action by plaintiffs, Hairpin-Turn Golden Eagle, Inc. (Golden Eagle) and John T. Morris (Morris), to recover damages against defendant, 3M Company (3M), arising out of contamination of the groundwater on real estate owned by Morris and the public water supply serving Golden Eagle's restaurant business (Golden Eagle restaurant) located in Clarksburg, Massachusetts. Aqueous film forming foam (AFFF) was applied at and adjacent to the Golden Eagle restaurant in an effort to extinguish a gasoline tanker truck fire and infiltrated the subsurface and has persisted in the environment contaminating the groundwater on Morris's real estate and the Golden Eagle restaurant public water supply. 3M manufactured the per- and polyfluoroalkyl substances (PFAS) used in the AFFF. Damages sustained and to be sustained include the costs of sampling and analyzing water samples from the well, evaluating treatment technologies and exploring locations for and creating an alternative water supply to service the Golden Eagle restaurant.

1

## PARTIES

1. Golden Eagle is a Massachusetts corporation with a principal place of business at 1935 Mohawk Trail, Clarksburg, Massachusetts 02147-3051.

2. John T. Morris is a natural person residing at 1935 Mohawk Trail, Clarksburg, Massachusetts.

3. 3M is a Delaware corporation with a principal place of business at 3M Center, St. Paul, Minnesota 55144-0000.

4. 3M has designed, manufactured, marketed, and sold PFAS-containing AFFF used in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

5. Proper venue for this case is the U.S. District Court for the District of Massachusetts under 28 U.S.C. § 1391.

4. The U.S. District Court for Massachusetts has subject matter jurisdiction pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 and Golden Eagle, Morris and 3M are citizens of different states.

5. Pursuant to Paragraphs 25-29 of Case Management Order No. 3 in *In re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, MDL No. 2873, in the U.S. District Court for the District of South Carolina, Charleston Division ("AFFF MDL"), Golden Eagle and Morris file this case directly in the AFFF MDL in the U.S. District Court for the District of South Carolina and expressly identify the U.S. District Court for the District of Massachusetts as the home venue and respectfully request that this civil action be sent back to that jurisdiction for trial and other post-pretrial matters.

## ALLEGATIONS COMMON TO ALL COUNTS

6. Since 1980, Golden Eagle has been a restaurant open to the public.

7. Morris owns the real estate upon which Golden Eagle is located.

8. Since at least 1980, Golden Eagle and Morris have relied upon well water to service the restaurant and residence located at 1935 Mohawk Trail, Clarksburg, MA.

9. On or about December 29, 1981, a gasoline tanker truck ruptured and caught on fire on the Mohawk Trail, also known as Route 2, in Clarksburg, Massachusetts in the immediate vicinity of the real estate owned by Morris upon which the Golden Eagle restaurant PWS is located.

10. Multiple municipal fire departments responded to the emergency to control the fire.

11. Emergency response personnel employed AFFF in the effort to extinguish the gasoline tanker truck fire.

12. 3M manufactured and placed in commerce the AFFF used in attempting to extinguish the gasoline tanker truck fire, which AFFF or constituents thereof contained per- and polyfluoroalkyl substances (PFAS).

13. 3M's AFFF PFAS infiltrated the subsurface at and surrounding Golden Eagle and Morris's real estate.

14. As a result of PFAS infiltrating the subsurface, groundwater used for Golden Eagle's potable water supply became contaminated.

15. Because it services the Golden Eagle restaurant, Golden Eagle's potable water supply is designated a Transient Non-Community Public Drinking Water Supply to which the Massachusetts Department of Environmental Protection (MassDEP) has assigned Public Water Supply (PWS) Identification Number 1063005.

16. In or about 2022, MassDEP caused PWSs in Massachusetts to be sampled and tested for PFAS contamination.

17. On or about April 12, 2022, MassDEP's contractors sampled and tested Golden Eagle's public water supply well located on Morris's real estate for PFAS.

18. Massachusetts has designated 6 PFAS and promulgated a rule listing a subgroup of six closely related PFAS, termed PFAS6, that due to their close structural similarities, comparable toxicities and long half-lives are treated additively.

19. Massachusetts has established a Massachusetts Maximum Contaminant Level for PFAS6 of 20 nanograms per liter (ng/l).

20. Upon laboratory analysis, further samples collected on or about April 12, 2022, from Golden Eagle's PWS yielded results of 812.6 ng/l of PFAS6 in the sample.

21. On or about May 11, 2022, samples were collected from Golden Eagle's PWS and analyzed. Laboratory analytical results reported 731.6 ng/l of PFAS6 in the sample.

22. On or about July 1, 2022, MassDEP advised Golden Eagle and Morris that a site-specific health assessment had been performed that determined consumption and other uses of the Golden Eagle PWS water pose an unacceptable health risk to consumers.

23. MassDEP further advised Golden Eagle and Morris that, to reduce the risk of PFAS6 exposure to patrons, workers and residents consuming water from Golden Eagle's PWS, Golden Eagle was required to cease immediately using such water for all consumptive purposes unless and until Golden Eagle installed and was operating a MassDEP-approved PFAS treatment system.

24. Golden Eagle's PWS water has high levels of sodium.

25. On information and belief, existing technologies to treat PFAS contaminated water require removal of sodium from the water prior to application of treatment for PFAS.

26. Golden Eagle and Morris do not have the resources nor available space for equipment to treat its PWS water for sodium prior to treatment for PFAS.

27. Based on current technology as it is known to Golden Eagle and Morris after inquiry and investigation, Golden Eagle cannot treat its existing PWS to reduce PFAS6 to currently acceptable levels below 20 ng/l of PFAS 6.

28. On information and belief, national and Massachusetts standards for acceptable levels of PFAS6 in drinking water will become more stringent in the next few years.

29. It is infeasible for Golden Eagle to connect to another existing PWS.

30. Golden Eagle and Morris have to create and use a new source of water to serve as a PWS for the restaurant and the residents living on the Golden Eagle premises.

31. Investigation of potential sites for alternative water supply wells yields projected costs approximating $750,000.00 to create an access road to a drilling location, to drill and develop a well, to install electrical connections to power the well pump and to provide the necessary plumbing to connect a new well to serve as a PWS for the Golden Eagle restaurant and residence.

32. MassDEP has directed Golden Eagle to discontinue menu items prepared with its PWS water, including those with ingredients that absorb PWS water or that involve adding PWS water.

33. MassDEP has directed Golden Eagle to replace water from the PWS with bottled water.

34. MassDEP has directed Golden Eagle to post public notices about the PFAS6 contamination of its PWS.

35. There may be no existing or anticipated technology capable of treating the levels of PFAS in Golden Eagle's PWS to currently acceptable Massachusetts Maximum Contaminant Levels and to federal and Massachusetts levels likely to be required in the future.

36. Each of the chemicals compiled on the list of PFAS6 is persistent, bioaccumulative and toxic.

## CAUSES OF ACTION

### Count I—Negligence

37. Golden Eagle and Morris adopt by reference the allegations of paragraphs 1 through 36.

38. Since on or before December 29, 1981, 3M owed a duty to Golden Eagle and Morris not to market and introduce into commerce persistent, bioaccumulative and toxic PFAS in AFFF in such manner as could contaminate Morris's real estate and corrupt groundwater used for Golden Eagle's PWS.

39. 3M breached its duty to Golden Eagle and Morris by marketing and introducing into commerce AFFF containing PFAS that in the ordinary course of use contaminate soil and infiltrate the subsurface and contaminate groundwater below the surface of Morris's real estate used for Golden Eagle's PWS, and which did in fact contaminate the groundwater beneath the surface of Morris's real estate.

40. As a direct and proximate result of 3M's breach of its duty to Golden Eagle and Morris, Golden Eagle and Morris have sustained and continue to sustain loss, harm and damages.

41. Loss, harm and damages to Morris's real estate and Goden Eagle's PWS were foreseeable at all times pertinent to this cause of action.

42. 3M is liable to Golden Eagle and Morris for damages in an amount to be proved at trial.

### Count II—Gross Negligence

43. Golden Eagle and Morris adopt by reference the allegations of paragraphs 1 through 42.

44. At the time 3M marketed and put into commerce AFFF containing PFAS, 3M knew or should have known that AFFF posed a risk of infiltrating the subsurface and contaminating groundwater used for potable water supplies.

45. 3M's conduct was reckless and grossly negligent.

46. 3M's conduct breached it duty to Golden Eagle and Morris by marketing and introducing into commerce AFFF containing PFAS that in the ordinary course of use infiltrate the subsurface and contaminate groundwater used for Golden Eagle's PWS.

47. As a direct and proximate result of 3M's gross negligence and reckless conduct, Golden Eagle and Morris have sustained and continue to sustain loss, harm and damages.

48. The loss, harm and damages sustained and continuing to be sustained by Golden Eagle and Morris were foreseeable at all times pertinent to this cause of action.

49. 3M is liable to Golden Eagle and Morris for gross negligence and reckless conduct and punitive damages in an amount to be proved at trial.

### Count III—Product Liability
**Implied Warranty of Merchantability—Design Defect**
**Uniform Commercial Code, M.G.L. c. 106, § 2-314**

50. Golden Eagle and Morris incorporate by reference the allegations of paragraphs 1 through 49.

51. 3M designed, manufactured, marketed, and sold AFFF products containing PFAS in commerce knowing that the use of the AFFF could contaminate soil and cause infiltration of PFAS to the subsurface and contamination of groundwater used for PWSs.

52. 3M knowingly placed AFFF products that contained PFAS into the stream of commerce with full knowledge that they would be and were sold to end users for use in suppressing gasoline and other fires.

53. 3M knew, or reasonably should have known, that its design, manufacture, marketing, and sale of AFFF products, as well as its customers' use of AFFF products in an intended or reasonably foreseeable manner would result in the release of PFAS in the environment, including contamination of soil and infiltration into the subsurface and contamination of groundwater used for PWSs.

54. 3M's AFFF products were defective in design and unreasonably dangerous because, among other things, its AFFF products cause extensive and persistent PFAS contamination when used in a reasonably foreseeable manner; PFAS released to the environment from 3M's AFFF products contaminate soil and infiltrate the subsurface and contaminate groundwater used for PWSs; and 3M failed to disclose reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential ecological and health effects of PFAS.

55. 3M AFFF products were in the same condition when they were purchased and/or used with respect to the gasoline tanker truck fire as they were when they left 3M's control. 3M

customers used the AFFF products in a reasonably foreseeable manner and without any substantial change in the condition of the products.

56. As designer, manufacturer, marketer, and seller of AFFF products, 3M had to make and sell products that are reasonably fit, suitable, and safe for their intended or reasonably foreseeable uses and also to any person or property that might reasonably be expected to come into contact with those products.

57. At all times relevant to this action, the AFFF products 3M designed, manufactured, marketed, and sold were dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

58. As a direct and proximate result of the defects in 3M's design, manufacture, marketing, and sale of AFFF Products containing PFAS, PFAS contaminated soil and infiltrated the subsurface and contaminated groundwater used for Golden Eagle's PWS, causing Golden Eagle and Morris to suffer loss, harm and damages.

59. Based upon 3M's understanding of its own products, it was reasonably foreseeable that the use of AFFF Products would contaminate soil and infiltrate the subsurface and contaminate groundwater used for Golden Eagle's PWS. 3M marketed and sold its defective products as safe and fit for their ordinary purpose and failed to warn users of 3M's AFFF products of the risks associated with the foreseeable use of 3M's products.

60. At all times relevant to this action, the foreseeable risk to the environment and public health and welfare posed by 3M's AFFF products containing PFAS outweighed the cost to 3M of reducing or eliminating such risk.

61. At all times relevant to this action, 3M knew or should have known about reasonably safer and feasible alternatives to their AFFF products, and the omission

9

of such alternative designs rendered their AFFF products not reasonably safe.

62. As a direct and proximate result of 3M's acts and omissions, Golden Eagle and Morris have incurred, are incurring, and will continue to incur loss, harm and damages in an amount to be proved at trial related to PFAS contamination of groundwater used for Golden Eagle's PWS.

63. Golden Eagle and Morris are entitled to damages in an amount to be proved at trial.

64. 3M acted with willful or conscious disregard for the rights, health, and safety of Morris and Golden Eagle and its customers, thereby entitling Golden Eagle and Morris to an award of punitive damages in an amount to be determined at trial.

<u>**Count IV—Products Liability**</u>
**Implied Warranty of Merchantability—Failure to Warn**
**Uniform Commercial Code, M.G.L. c. 106, § 2-314**

65. Golden Eagle and Morris adopt by reference the allegations of paragraphs 1 through 64.

66. 3M was required to warn end users of, among other things, the dangers posed by 3M's AFFF products and the contamination that would result from their intended use.

67. 3M knew, or should have known, of the substantial risk of harm to human health and the environment from their AFFF products containing PFAS, but 3M failed to warn, or inadequately warned, of the likelihood that PFAS would be released into the environment during the normal use of 3M's AFFF products and of the widespread, toxic, and persistent effects of such releases. 3M failed to provide such warnings to users and buyers of their AFFF products containing PFAS and others to which it was reasonably foreseeable 3M's AFFF products would cause harm. To the extent 3M provided any warnings about its products,

10

they were not warnings that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger posed, and the warnings did not convey adequate information on the dangers of AFFF products containing these chemicals to the mind of a reasonably foreseeable or ordinary user or bystander.

68. Despite the fact that 3M knew or should have known about the risks of AFFF Products containing PFAS, 3M withheld such knowledge from government entities and the public. Moreover, 3M affirmatively distorted and/or suppressed 3M's knowledge and the scientific evidence linking 3M's products to the unreasonable dangers they pose.

69. At no time relevant to this action did 3M warn users and buyers of their AFFF products who it was reasonably foreseeable would be harmed by AFFF products, including Golden Eagle and Morris and others, or that 3M AFFF products would release PFAS into the environment during the product's normal use which would cause widespread, toxic, and persistent effects.

70. Had 3M provided adequate warnings about the hazards associated with its AFFF products containing PFAS, users and buyers, and others who it was reasonably foreseeable would be harmed by the AFFF products, would have heeded those warnings.

71. As a direct and proximate result of 3M's failure to warn of the hazards of AFFF products containing PFAS, PFAS infiltrated the subsurface and contaminated groundwater on Morris's real estate used for Golden Eagle's PWS.

72. As a direct and proximate result of 3M's acts and omissions, Golden Eagle and Morris have incurred, are incurring, and will continue to incur in the future loss, harm and damages related to PFAS contamination in an amount to be proved at trial.

73. 3M knew it was substantially certain that its acts and omissions described above would cause loss, harm and damages to soil and groundwater like Morris's and PWSs like Golden Eagle's.

74. 3M is strictly liable for all such loss, harm and damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Golden Eagle and Morris pray that this honorable Court:

(i) Hold 3M liable to Golden Eagle and Morris in an amount to be determined at trial;

(ii) Award Golden Eagle and Morris damages in an amount to be determined at trial;

(iii) Award Golden Eagle and Morris punitive damages in an amount to be determined at trial;

(iv) Award Golden Eagle and Morris their costs and reasonable attorneys' and experts' fees;

(v) Award Morris and Golden Eagle pre- and post-judgment interest; and

(vi) Award such other relief as the Court deems just and proper.

Plaintiffs, Hairpin-Turn Golden Eagle, Inc.
and
John T. Morris
By their attorney

Date: July 25, 2023

/s/Christopher B. Myhrum
Christopher B. Myhrum
Massachusetts BBO No.: 365980
1500 Main Street, Suite 2012
P.O. Box 15407
Springfield, MA 01115-5407
Mobile: (413) 221-4493
Fax:     (413) 328-6279
Chrismyhrum@myhrumlaw.com